**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Eunice Freeman,** | ) | **CASE NO. 1:12 CV 300** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **AVI Foodsystems, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 13). This case alleges retaliation in employment. For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Eunice Freeman, proceeding *pro se*, filed this Complaint against defendant AVI Foodsystems, Inc. (hereafter, AVI or defendant) alleging retaliation. Evidence submitted to this Court provides the following facts.

Plaintiff began working for Shaker Heights City School District around 1993 in the Food Service Department as a Cook's Helper. By 2008, plaintiff worked at Woodbury

1

Elementary School. Around 2009, plaintiff began working as Head Cook. (pltf. depo.) In September 2008, plaintiff received a written warning for insubordination for failure to wear her uniform while working. (*Id.* Ex. 2) In February 2009, she received a verbal warning for violation of the attendance policy. (*Id.* Ex. 3) In March 2009, plaintiff received a verbal warning for not handling food "properly or safely." (*Id.* Ex. 5) In April 2009, plaintiff was suspended without pay for five days for failing to follow the directives of her supervisor, and exercising poor judgment in the preparation of food which placed "elementary students in harm's way." Plaintiff was informed that her next failure would result in the loss of her Head Cook position. (*Id.* Ex. 6) Plaintiff acknowledged at deposition that this suspension arose of out her serving unsafe chicken to the students. (pltf. depo. 102-103)

Robert Kreiner, the Business Administrator for the Shaker Heights City School District, submits plaintiff's performance reviews, dated May 2009 and May 2010. (Kreiner decl. Exs. A and B) The May 2009 evaluation rated plaintiff as "unsatisfactory" or "improvement needed" in 10 out of 16 categories. In the May 2010 evaluation, plaintiff received the middle rating of "good" in all categories but three where she received a rating of "very good." (*Id.*)

Plaintiff stopped working for Shaker Heights City School District in May or June 2010 at which time she was laid off due to the outsourcing of the cafeteria operations to AVI. (pltf. depo. and Exs.) In June 2010, plaintiff filed two charges of discrimination against the Shaker Heights Board of Education. (pltf. depo. Exs. 9 and 10) The first, filed on June 15, 2010 with the Ohio Civil Rights Commission (OCRC), alleges that plaintiff was discriminated against on the basis of race (black) and gender (female) in the denial of three

2

promotions. Plaintiff further alleged that she had been terminated on May 10, 2010 because respondent "was hiring an outside company to fill its culinary positions." The second charge, filed on June 16, 2010 with the Equal Employment Opportunity Commission (EEOC), alleges that plaintiff was discriminated against because of her race when she was denied the position of Cafeteria Manager in May 2009. (*Id.*)

In late June 2010, defendant AVI learned that the Shaker Heights City School District Board of Education (hereafter, Shaker Heights) had selected it to provide food management services at all its school facilities. On August 1, 2010, AVI entered into an agreement with Shaker Heights to provide food management services at Woodbury Elementary School, among the other facilities. (Jeffrey Wharry decl.)

Pursuant to the agreement between defendant and Shaker Heights, AVI would follow the terms of applicable collective bargaining agreements, including a Memorandum of Understanding between Shaker Heights and the Union representing food service employees. The Memorandum of Understanding indicated that any food service contractor would (1) employ all current food service employees of Shaker Heights who met the contractor's entry qualifications provided they complete an employment application and go through an interview process and (2) pay the current food service employees not less than 90% of their hourly rate of pay with Shaker Heights. (*Id.*)

Defendant sent plaintiff a letter dated July 2, 2010, inviting her to interview. (pltf. depo. Ex. 14) On July 13, 2010, plaintiff was interviewed by Jeffery Wharry, AVI's Director of Human Resources, and Stefanie Tuma, AVI's Resident Director of the Shaker Heights account. (Wharry and Tuma decls.) Prior to making a hiring decision, Wharry and Tuma

3

discussed plaintiff's job performance with Robert Kreiner. Kreiner informed them that plaintiff had been suspended for serving raw chicken to children, received a final written warning, displayed a negative attitude towards her management team, did not get along with her co-workers, exhibited poor attendance, and had been counseled for failing to pull sufficient food for the menu, running out of food at lunch, and serving food at unsafe temperatures. Wharry also reviewed plaintiff's performance evaluations for the two prior years. Based on this information, Wharry and Tuma decided not to hire plaintiff. They also decided not to hire Moneda Golden, another former Shaker Heights food service worker, due to concerns with her performance as expressed by Kreiner. (*Id.*)

Subsequently, Kreiner approached Wharry and Tuma and told them that plaintiff had complained to the Union that AVI had not hired her and that Shaker Heights had failed to require AVI to hire her per the terms of the Memorandum of Understanding. On this basis, Kreiner asked AVI to hire plaintiff and provide her with pay retroactive to the date AVI hired other former Shaker Heights employees. Because he was concerned that Moneda Golden was going to make similar complaints, Kreiner asked AVI to do the same for her. Based on Kreiner's request and AVI's wish to appease Shaker Heights, AVI hired plaintiff and Golden and provided them with the retroactive pay. (*Id.*)

Plaintiff began working for AVI on August 30, 2010 as a Cook's Helper at four hours per day for five days per week. She was not hired as a Head Cook given the issues with her performance. Golden was also hired in a role working four hours per day. (*Id.*) Shortly after she began working for AVI, plaintiff approached Tuma seeking a promotion to the Head Cook position at Woodbury Elementary School but it was unavailable. (Tuma decl.)

4

In December 2010, plaintiff filed an OCRC charge against AVI asserting that she had been retaliated against for filing the prior charge of discrimination in June 2010 against Shaker Heights, and that the retaliation was in the form of reduced work hours and failure to promote to Head Cook. (Compl. Ex. A)

Plaintiff thereafter filed this Complaint asserting one count for retaliation based on the filing of her previous charges against Shaker Heights. The claim includes the following alleged instances of retaliation: defendant violated the Memorandum of Understanding by not initially hiring plaintiff, defendant failed to promote plaintiff, defendant failed to hire plaintiff at her previous hours, defendant increased plaintiff's hours but then reduced them again, defendant demoted plaintiff, and defendant provided false information to the OCRC.

This matter is now before the Court upon defendant's Motion for Summary Judgment.[1]

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

---

[1] Plaintiff's brief in opposition is 33 pages in length, not including a four page, single-spaced statement of issues to be decided. This exceeds the permitted length of 20 pages. Nonetheless, the Court has considered the entire brief.

5

> depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57

F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

Defendant argues that plaintiff's retaliation claim fails as a matter of law.  For the following reasons, this Court agrees.

To establish a prima facie retaliation case, plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Hicks v. SSP America, Inc.,* 2012 WL 3140243 (6th Cir. August 03, 2012) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559(6th Cir.2000) ). Once plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for the adverse employment action. The burden then shifts back to plaintiff to show that the defendant's stated reason amounts to a pretext for unlawful retaliation. *Daugherty v. Sajar Plastics, Inc*., 544 F.3d 696, 707 (6th Cir.2008).

Defendant contends that plaintiff cannot establish a prima facie case or pretext. Defendant's contentions are well-taken.

Plaintiff's Complaint makes clear that her claims are premised on the two civil rights charges, discussed above, that she filed against Shaker Heights with the OCRC and EEOC in June 2010.  However, there is no evidence the exercise of her civil rights was known to the defendant.  In particular, Wharry who made the initial decision not to hire plaintiff and then

7

hired her as a Cook's Helper at four hours per day, declares that he was unaware of the civil rights charges at the time he made these decisions. (Wharry decl. ¶10) Likewise, Tuma, who was involved in the decisions to initially not hire plaintiff, then hire her as a Cook's Helper at four hours per day, and not promote plaintiff to Head Cook because the position was unavailable, declares that she was unaware of the civil rights charges. (Tuma decl. ¶ 9) Additionally, plaintiff testified at deposition that only her daughters and her friend were aware that she filed these two charges. (pltf. depo. 111, 120-123) On this basis, plaintiff fails to satisfy the second and fourth elements of the prima facie case.

Plaintiff argues at great length that there is a causal connection between defendant and Shaker Heights, and between Wharry, Tuma, and Kreiner. Plaintiff is confusing these relationships with her prima facie burden of establishing a causal connection between her filing the EEOC and OCRC charges in June 2010 against Shaker Heights and the adverse employment actions taken by defendant. The connections between these entities are immaterial to plaintiff's burden.

Plaintiff also contends that the Court should infer that Wharry and Tuma had knowledge of her charges against Shaker Heights because they spoke to Kreiner prior to making their initial decision not to hire plaintiff, and a handwritten notation on her interview guide indicates that she had a conflict with prior management. The Court cannot so infer the required knowledge. There is no evidence to dispute Wharry's and Tuma's declaration testimony that they only discussed plaintiff's work performance and disciplinary history with Kreiner, and they had no knowledge of the charges at the time they made their decisions. There is no evidence indicating that Wharry and Tuma were informed about the

8

discrimination charges. With regard to the notation on the interview guide, plaintiff herself testified that she told Wharry and Tuma during her interview that some people had problems with her. (pltf. depo. 157) More importantly, however, a notation regarding conflict with management does not indicate in any way that defendant was aware that plaintiff filed discrimination charges.

Plaintiff argues extensively that Kreiner, or Wharry and Tuma, violated the "Employment Privacy Act" by sharing with AVI the information regarding plaintiff's employment with Shaker Heights. There does not appear to be such an Act, and plaintiff seems to be referring to the Freedom of Information Act which does not apply to private employers. Nonetheless, plaintiff does not allege such a claim in her Complaint.

Next, plaintiff contends that defendant "was given a year to learn the workings of the cafeteria department and was aware of the goings on of all Board employees, which disputes their claim that they had no previous knowledge of my complaints against their 'customer' Shaker Heights." (Doc. 18 at 12) Plaintiff points to no evidentiary support for this statement. Plaintiff did testify that an AVI employee was overseeing the operations of the high school cafeteria in the prior year. Notwithstanding, even if defendant "was aware of the goings on" of Board employees, or had knowledge of the high school cafeteria where plaintiff did not work, this is no basis to assume that defendant had knowledge of plaintiff's EEOC and OCRC charges.

For these reasons, plaintiff fails to establish a prima facie case because she has not demonstrated that defendant had knowledge of the exercise of her civil rights or that there was a causal connection between the protected activity and the adverse employment action.

9

Even assuming plaintiff had satisfied the prima facie case, she is unable to establish pretext.

As set forth above, plaintiff's Complaint alleges that she was retaliated against when she was initially not hired, not promoted, received reduced hours and demoted, and when defendant provided false information to the OCRC. As an initial matter, plaintiff's OCRC charge alleges only that defendant retaliated against her by reducing her hours and failing to promote her. Thus, plaintiff's other allegations have not been administratively exhausted. They fail nonetheless.

Defendant has set forth a legitimate, non-discriminatory reason for initially failing to hire plaintiff, and then hiring her into the Cook's Helper position at four hours per day. Specifically, Wharry and Tuma did not initially hire plaintiff because they had been informed by Kreiner that plaintiff had been suspended for serving raw chicken to children, received a final written warning due to performance issues, displayed a negative attitude towards her management team, did not get along with her co-workers, exhibited poor attendance, and had been counseled for failing to pull sufficient food for the menu, running out of food at lunch, and serving food at unsafe temperatures. Wharry had also reviewed plaintiff's performance evaluations for the two prior years which did not give plaintiff favorable appraisals. After Shaker Heights asked defendant to hire plaintiff, Wharry and Tuma did not consider plaintiff to be qualified to perform as Head Cook, and so placed her in the Cook's Helper position.

At a minimum, defendant is entitled to the benefit of the honest belief rule. The Sixth Circuit has recognized,

10

> Under this rule, if an employer demonstrates an honest belief in its proffered reason for the adverse employment action, the inference of pretext is not warranted... [A]n employer's proffered reason is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made. Thereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held. An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact. Moreover, so long as the employer has established its honest belief, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.

*Tibbs v. Calvary United Methodist Church,* 2012 WL 5861725 (6th Cir. Nov. 20, 2012) (citing *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274 (6th Cir. 2012).

Here, Wharry and Tuma reasonably relied upon the particularized facts brought forward to them by Kreiner, and upon Wharry's own review of plaintiff's evaluations. Plaintiff fails to show that defendant's belief was not honestly held. While plaintiff attempts to undermine or discredit the discipline issued by Shaker Heights, this fails to call into question defendant's honest belief that plaintiff was not qualified given her disciplinary record.

Plaintiff also asserts that defendant "continually [gave] different reasons for hiring me." (Doc. 18 at 15) However, defendant consistently stated that it did not hire plaintiff or Moneda Golden because it believed they were not qualified for employment based on the references from Shaker Heights, and that this decision was reversed after Shaker Heights requested such.

Plaintiff next contends that defendant violated the Memorandum of Understanding between Shaker Heights and the Union, and defendant contradicted itself by stating that it would follow the Memorandum of Understanding and yet did not recognize the Collective

11

Bargaining Agreement.  Plaintiff's assertions are unavailing.  Wharry's undisputed declaration testimony is that AVI entered into an agreement with Shaker Heights to provide the food management services. Pursuant to that agreement, AVI would follow the terms of all collective bargaining agreements including the Memorandum of Understanding.  After AVI acquired the Shaker Heights account, it did not recognize the Union because only a minority of the employees associated with the account had previously been members of the Union.  The Union did not challenge this decision.  (Wharry decl.) There is no evidence to dispute that AVI complied with the applicable requirements of the Memorandum of Understanding.  Defendant did not violate the latter because it found plaintiff to be unqualified ("employ all current food service employees of Shaker Heights who met the contractor's entry qualifications").  In a similar manner, defendant found Moneda Golden, who apparently did not engage in Title VII protected activity, to likewise be unqualified.  Plaintiff's lengthy arguments regarding alleged violations of the Collective Bargaining Agreement and related correspondence are irrelevant because such did not apply to her employment with defendant.  Nor did plaintiff allege a breach of the Collective Bargaining Agreement.

As to her failure to promote claim, Tuma's declaration states that shortly after plaintiff began working for AVI, plaintiff approached Tuma seeking a promotion to the Head Cook position at Woodbury Elementary School but it was unavailable. Plaintiff points to no specific evidence to contradict this statement, and even plaintiff's deposition testimony seems to be that when she applied for the Head Cook position, it was not available.  (pltf. depo. 204-205) Plaintiff argues that defendant hired a Caucasian female, Carolyn Leonette, into the Head Cook position at Woodbury after defendant reported to the OCRC that the position had been

merged with the Kitchen Manager position. But, plaintiff presents no evidence showing that she applied for the same position, and at the same time, for which Leonette was hired. Moreover, defendant's asserted reason for not hiring plaintiff into the Cook's Helper, much less Head Cook position, was her prior performance deficiencies. Plaintiff has no evidence to show that a failure to promote her to Head Cook (even if the position were available) was a result of retaliation for filing an OCRC charge rather than her deficient record.

Nor does plaintiff demonstrate pretext with regard to her hours. Defendant presents evidence that plaintiff began working for AVI as a Cook's Helper for four hours per day. In her brief, plaintiff states that she was then given two additional hours but which were "reduced back to four" because "the powers that be" instructed that plaintiff should be kept at "four hours period." (Doc. 18 at 25) Plaintiff points to no evidentiary support. Plaintiff also seems to assert that her hours were reduced after she submitted a letter in her "ongoing grievances to the Union attorney." (*Id.* at 26) But, plaintiff admits that defendant was not aware of this letter. (pltf. depo. 212-213) At any rate, the letter is not Title VII activity. Regardless, plaintiff's deposition testimony seems to indicate that her hours fluctuated between four and seven hours. (pltf. depo. 198, 242-245) Thus, the evidence does not show that plaintiff was hired at four hours, given an increase in hours, and then reduced again because of Title VII activity. Plaintiff's allegation of "demotion" seems to be connected to her reduced hours. (*Id.*)

Finally, plaintiff's allegation that she was retaliated against when defendant provided false information to the OCRC fails because it does not involve an adverse employment action.

13

For these reasons, plaintiff's sole claim of retaliation fails.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/11/13